**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **PAMELA DEMAREE** ) | |
| **17164 Jessica Street** ) | |
| **Gardner, KS 66030** ) | |
| Plaintiff, ) | |
| **v.** ) | **Case No.** 10-CV-2426 EFM/KGG |
| ) | |
| **UNIFIED SCHOOL DISTRICT #231** ) | **Division:** |
| **Serve: Superintendent: Bill Gilhaus** ) | |
| **231 E. Madison** ) | |
| **Gardner, KS 66030** ) | |
| Defendant. ) | |

COMPLAINT
(Jury Trial Demanded)

  **COMES NOW** Plaintiff, Pamela Demaree, and for Plaintiff's complaint for damages  pursuant to

42 U.S.C. §§12101-12213, and 29 U.S.C. §§ 2612, et. seq., as against Defendant Gardner School District,

U.S.D. #231, ("Employer"), and in support Plaintiff states as follows:

**Parties and Jurisdiction:**

1.   Plaintiff resides and may be served at 17164 Jessica Street, Gardner, Johnson County, Kansas.

2.   Defendant Unified School District #231, is a municipal corporation or government organization,

  whose principle offices are located at 231 E. Madison, Gardner, Kansas.  Defendant Employer

  may be served by service upon the Superintendent of Employers for District 231, Bill Gilhaus, at

  the above referenced address, in Johnson County, Kansas.  Fed. R. Civ. Pro. 4(j)(2).

3.   The facts and occurrences described herein occurred in Johnson County, Kansas.

4.   Jurisdiction and venue are proper before this Court.

**Background Facts, Common to All Counts:**

5.   Plaintiff was employed by Employer in October 1993, as a Title 1 Para.

6.   In the Spring of 2002, Plaintiff was diagnosed with depression and anxiety.

7.      In the Spring of 2002, Plaintiff informed Employer of her diagnoses and that Plaintiff would be taking medications for the disorders; that Plaintiff would be using a stress ball; and that Plaintiff would likely experience occasional absences from work when Plaintiff's stress levels reached certain highs, due to unexpected confrontations and/or unexpected over-working.

8.      Plaintiff was instructed to file her medications with the health aide, which Plaintiff did, and in later years, Plaintiff filed her medications directly with the Principal.

9.      Plaintiff was allowed very minimal time off when Plaintiff experienced an episode.

10.     Plaintiff was provided with an assistant teacher.

11.     Lesson Plans for Plaintiff's children were always drafted by a teacher and provided to Plaintiff.

12.     On those days when Plaintiff was unable to attend, the assistant teacher or the individual teachers handed out Plaintiff's form lesson plans for Plaintiff.

13.     In the Spring of 2008, Employer hired a new Principal and new title 1 teacher that would be working with Plaintiff in the Fall of 2008.

14.     The end of July 2008, Plaintiff met with the new Principal and new teacher and informed them of Plaintiff's diagnoses; of Plaintiff's medications; and that Plaintiff's episodes were generally brought on by stressful situations and over-working.

15.     Within days of Plaintiff's July 2008 meeting with the new Principal and teacher, Plaintiff was contacted by the assistant director of SPED, and by the director of HR, both of whom questioned Plaintiff about her working for Employer given Plaintiff's disability.

16.     Plaintiff informed the assistant director of SPED and the director of HR that Plaintiff had been treated and able to work for several years with only minimal or no accommodation.

17.     In August/September 2008, Employer informed Plaintiff that Employer was uncertain if Employer was going to hire an assistant teacher.  Plaintiff was instructed to continue as normal, and that an assistant would be provided as needed.

18.     In October 2008, Plaintiff was unable to come to work, whereon Plaintiff contacted Employer

        pursuant to Employer's policies, and Plaintiff forwarded plans to her teachers for the days

        activities for her groups.

19.     In October, 2008, upon Plaintiff's return, Plaintiff requested paperwork to assert Plaintiff's FMLA

        time.

20.     Employer refused or failed to provide Plaintiff with any information concerning Plaintiff's

        request for FMLA time.

21.     On or about the same time, Principal asked Plaintiff if Plaintiff didn't need to just take an entire

        year off to deal with Plaintiff's "problems".

22.     On or about October 23, 2008, Plaintiff approached Principal concerning a scheduled meeting

        for that evening.  Plaintiff informed Principal that due to the stress of the day's activities,

        Plaintiff was culminating in a depression/anxiety episode, and that Plaintiff needed to be

        excused from the meeting.

23.     Principal refused to discuss Plaintiff's request and Principal denied Plaintiff's request to be

        excused from the meeting on October 23, 2008.

24.     On October 27, 2008, Principal called Plaintiff into Principal's office, whereon Principal informed

        Plaintiff that during the October 23, 2008 conversation between Principal and Plaintiff, wherein

        Plaintiff had requested to be excused from the meeting of that day, Plaintiff allegedly stated "if I

        have to go, I will probably rip someone's head off," and that Plaintiff was being reprimanded for

        Plaintiff's off handed statement to Principal.

25.     On October 28, 2008, Principal met with Plaintiff to go over the letter of reprimand that would

        remain in Plaintiff's permanent file, documenting the allege statement  by Plaintiff to Principal.

26.   On or about October 28/29, 2008, Plaintiff was required to meet with Employer at the Board of

Education concerning Plaintiff's allege comment to Principal and Plaintiff's lesson plans.

Employer tape recorded this meeting.

27.   On or about October 29, 2008, Plaintiff was informed that Plaintiff could no longer use the pre-

prepared lesson plans, purchased by Employer for Plaintiff's groups, but that Plaintiff would be

required to draft Plaintiff's own lesson plans for each group for each day, and that Plaintiff

would be required to submit the same to Principal.  Plaintiff was also informed that Plaintiff

would no longer be provided with a substitute for any days taken off by Plaintiff.  This meeting

was recorded by Employer.

28.   At the October 29, 2008 meeting, Plaintiff informed Employer that Plaintiff had never prepared

lesson plans before and that Plaintiff had no experience or education in lesson planning,

whereon Employer refused to discuss Plaintiff's concerns, and Employer informed Plaintiff that

Plaintiff would be required to follow all recommendations of Plaintiff's Principal concerning

lesson plans.

29.   Immediately following Plaintiff's meeting with Employer, Plaintiff was informed by Teacher,

Principal and Employer of Plaintiff's modified job description wherein Plaintiff would be required

to draft daily lesson plans for all of Plaintiff's groups.

30.   Plaintiff's job description as a Para I educator do not require Plaintiff to draft lesson plans.

31.   Plaintiff's standard evaluation form does not contain evaluation for lesson planning.

32.   Plaintiff is not a licensed teacher in the State.

33.   On October 31, 2008, Employer conducted a surprise, unscheduled, job performance evaluation

of Plaintiff.  Pursuant to employer's policies evaluations are generally only conducted annually in

March of each year.

34.    Plaintiff's October job performance evaluation was forwarded to Principal and Employer for Principal and Employer to make changes to the performance evaluation, even though neither Principal nor Employer had ever observed Plaintiff's performance, and even though Para evaluations are generally only performed by the Para Evaluator.

35.    Despite only having instructed Plaintiff for the <u>first time, two days prior</u>, of Employer's new requirement that Plaintiff draft lesson plans, Employer modified Plaintiff's evaluation to reprimand Plaintiff for failing to "[meet] expectations in regards to lesson planning…," along with other derogatory comments about Plaintiff's failure to provide lessons plans, all of which was placed in Plaintiff's permanent file.

36.    On or about December 8, 208, Plaintiff took off work to attend the funeral of Plaintiff's young niece.

37.    On or about December 19, 2008, Principal reprimanded Plaintiff for taking time off to attend the funeral of Plaintiff's niece.

38.    Employer failed or refused to notify Plaintiff of Plaintiff's FMLA and/or statutory rights concerning Plaintiff's requested time off.

39.    In December 2008, through January 2009, Plaintiff was spending numerous hours off the clock attempting to prepare the requested lesson plans in addition to performing Plaintiff's other tasks.

40.    On or about the end of January 2009, Plaintiff was ill and missed three days due to illness.

41.    Prior to Plaintiff taking ill, Plaintiff had completed the requisite lesson plans as required under Plaintiff's modified job description.

42.    Plaintiff called in pursuant to employer's policies.

43.    Immediately upon Plaintiff's return, Employer requested that Plaintiff provide a doctor's note for the illness.

44.     Plaintiff provided the requested doctor's note documenting and excusing her illness and her ability to return to work.

45.     Despite Plaintiff providing a doctor's note, Plaintiff was reprimanded for the absences and a written reprimand was placed in Plaintiff's permanent file.

46.     Upon Plaintiff's return, Plaintiff requested paperwork to assert Plaintiff's FMLA time.

47.     Employer refused or failed to provide Plaintiff with any information concerning Plaintiff's request for FMLA time.

48.     On or about the same time, Plaintiff was reprimanded for failing to administer Plaintiff's lesson plans while Plaintiff was absent.

49.     Plaintiff checked that notebook/file where Plaintiff was instructed to deposit those lesson plans which Plaintiff was forced to draft, only to discover that the same had not been touched or used.

50.     On or about the first part of April, 2009, Plaintiff requested a transfer to another Para position where Plaintiff would not be required to draft lesson plans, or where Plaintiff could be able to use the purchased lesson plans, or where Plaintiff would be provided with a teacher or assistant that would hand out work on days when Plaintiff was not there, or any other reasonable accommodation given Plaintiff's disability.

51.     On April 1, 2009, Employer once again evaluated Plaintiff, wherein Employer noted all improvements since the November evaluation.  Plaintiff's evaluation was again forwarded to Employer and Principal for comments.

52.     During the review process of the evaluation with the Para Evaluator, when Plaintiff questioned the Para Evaluator about some of the comments in the evaluation, alleged by the Para Evaluator to have been made by Principal and Employer, the Para Evaluator stated that she could not

answer the same.  Employer's policies require that those comments in the evaluation be addressed by Employer.

53.  Toward the end of April 2009, Plaintiff's request for transfer, or accommodation was denied.

54.  On May 15, 2009, Plaintiff was summoned to the Employer Board Office.  Upon arriving at the requested time and place, Plaintiff witnessed Dr. Sumner/Employer/Superintendant, and Mr. Horne/Principal fire at least one other women from Plaintiff's school, as the office door was left open during the termination process of the other employee(s).

55.  On May 15, 2009, Plaintiff was told by her two male superiors that she was fired.  When Plaintiff inquired about the reason for the termination, after 16 years of service, Plaintiff was told that Plaintiff was terminated for those reasons stated in Plaintiff's evaluations.  Employer allowed Plaintiff to work the remainder of the school year.

56.  Plaintiff received a letter on or about early June instructing Plaintiff that Plaintiff no longer worked for USD #231.

57.  Plaintiff filed her complaint with the Equal Employment Opportunity Commission within 300 days of the allegations complained of herein, wherein Plaintiff received her right to sue letter from the EEOC on May 5, 2010.

COUNT I
Disability Discrimination

COMES NOW Plaintiff, pursuant to 42 U.S.C. §§ 12101, et. Seq., the Americans with Disabilities Act ("ADA"), and for Plaintiff's ADA claims, Plaintiff states as follows:

58.  Plaintiff incorporates Paragraphs 1 through 57 as if the same were set out here in more detail.

59.  Plaintiff is "disabled" within the meaning of 42 U.S.C. §§ 12101, et. seq, to wit:

   a.  As set out herein and above, Plaintiff was diagnosed in 2002 with depression and anxiety, by Plaintiff's psychiatrist;

b.   As a result of Plaintiff's depression and anxiety, Plaintiff is unable to sleep on a regular basis;

c.   As a result of Plaintiff's depression and anxiety, Plaintiff is unable to wake regularly some mornings;

d.   As a result of Plaintiff's depression and anxiety, Plaintiff develops headaches;

e.   As a result of Plaintiff's depression and anxiety, Plaintiff develops shortness of breath and an inability to breath properly;

f.   As a result of Plaintiff's depression and anxiety, Plaintiff is unable to work long days [defined as days in which Plaintiff anticipated working under nine hours, but is forced to work in excess of that time anticipated by Plaintiff];

g.   As a result of Plaintiff's depression and anxiety, Plaintiff is prone to anxiety attacks;

h.   As a result of Plaintiff's depression and anxiety, Plaintiff is unable to deal with extremely stressful situations;

i.   Plaintiff suffers numerous other mental and physical impairments as a result of Plaintiff's depression and anxiety.

60.   Plaintiff is qualified, with or without reasonable accommodation, to perform Plaintiff's duties as a level 1 Para educator, to wit:

a.   Plaintiff successfully performed Plaintiff's duties as a Para educator for some 7 years with Plaintiff's depression and anxiety disorder and with or without reasonable accommodation;

b.   Plaintiff was on a regular regiment of medication which enabled Plaintiff to perform Plaintiff's duties with or without reasonable accommodation;

c.   At all times relevant herein, Plaintiff was cleared by Plaintiff's doctor to continue to perform Plaintiff's job duties as a Para educator;

d.  As set out herein and above, Plaintiff at all times relevant to the allegations contained herein performed Plaintiff's job duties with or without reasonable accommodation;

e.  As set out herein and above, Employer refused to address Plaintiff's reasonable accommodations;

f.  As set out herein, below and above, Employer took adverse employment actions against Plaintiff immediately after Plaintiff requested accommodation.

61.  Employer discriminated against Plaintiff due to Plaintiff's depression and anxiety or due to Employer's perception of Plaintiff's depression and anxiety, to wit:

a.  Plaintiff notified Employer of Plaintiff's diagnoses of depression and anxiety, and Plaintiff's medication, exercise and other prescribed treatments for Plaintiff's depression and anxiety;

b.  Plaintiff continued to perform Plaintiff's job duties for the entirety of Plaintiff's employment, even after Plaintiff's diagnoses and treatment;

c.  As set out herein and above, immediately after notifying Employer's new management about Plaintiff's depression and anxiety Employer took numerous adverse actions against Plaintiff, all as a result of Plaintiff's disability and/or Employers perception(s) concerning Plaintiff's disability, to wit:

   i.  Immediately after Plaintiff notified Employer of Plaintiff's diagnoses of depression and anxiety, Employer requested that Plaintiff take a year off, and on belief, Employer's intent was to get rid of Plaintiff, and not to rehire Plaintiff;

   ii.  Immediately after Plaintiff notified Employer of Plaintiff's diagnoses of depression and anxiety, Employer served Plaintiff with a written warning for an allege comment made by Plaintiff;

iii.   At all times when Plaintiff requested accommodation, as set out herein, above and below, Employer refused to discuss any accommodation, and refused Plaintiff any reasonable accommodation;

iv.   The allege comment made by Plaintiff, described herein and above, was made only in the presence of Plaintiff and Employer and if made related only to Plaintiff's disability;

v.   The allege comment was not addressed by Employer at the time the allege statement was allegedly made, but rather became a topic of focus one week later and thereafter;

vi.   Employer's handbook and written policies do not provide for a written warning for comments such as those alleged to have been made by Plaintiff;

vii.   No statements similar to that statement alleged to have been made by Plaintiff were made, or documented or addressed with Plaintiff before or after the allege statement;

viii.   Plaintiff was terminated for the allege statement;

ix.   Employer's handbook and policies do not provide for, reprimand, written reprimand or termination for such a statement or statements;

x.   On belief, no other employee in Plaintiff's position was reprimanded for making the same or similar statements to Employer;

xi.   On belief, no other employee in Plaintiff's position has ever been terminated for making the same or similar statement(s).

d.   Immediately after Plaintiff notified Employer's new management about Plaintiff's depression and anxiety, Employer changed Plaintiff's job description to include functions which were not part of Plaintiff's job description, to wit:

i.   Employer altered Plaintiff's job duties to include drafting lesson plans, a function reserved for licensed educators;

ii.  On belief, State Regulation only allows for such lesson plans to be drafted by a licensed teacher;

iii. Plaintiff's job duties, as a Para I, do not include drafting lesson plans;

iv.  Employer did not alter Plaintiff's work schedule to allot time for Plaintiff to draft lesson plans;

v.   Employer did not provide Plaintiff with training to draft lesson plans;

vi.  Employer did not provide Plaintiff with that education necessary to draft lesson plans;

vii. Employer maintained purchased lesson plans, which had been used by Employer up until, and after, the time when Employer demanded that Plaintiff draft the lesson plans;

viii. On belief, other Para I educators in Plaintiff's position were not required to draft lesson plans;

ix.  On the only occasion(s) where the requested lesson plans would have been used, Employer failed to use the lesson plans;

x.   Plaintiff received written warning for improperly drafting lesson plans only two days after Employer assigned the lesson plans;

xi.  Plaintiff was terminated for Plaintiff's allege failure to draft lesson plans;

xii. Other Para I educators in Plaintiff's position did not receive written warning for failing to draft lesson plans;

xiii. Other Para I educators in Plaintiff's position were not terminated for failing to draft lesson plans;

xiv.   Employer's requirement that Plaintiff draft lesson plans was a mere pretext for discrimination against Plaintiff for Plaintiff's depression and anxiety;

xv.   Employer's written warnings for Plaintiff allege failure to draft lesson plans was a mere pretext for discrimination against Plaintiff for Plaintiff's depression and anxiety;

xvi.   Employer's termination of Plaintiff for Plaintiff allege failure to draft lesson plans was a mere pretext for discrimination against Plaintiff for Plaintiff's depression and anxiety;

e.   Immediately after Plaintiff notified Employer's new management about Plaintiff's depression and anxiety, Employer began reprimanding and writing Plaintiff up for otherwise excused absences, to wit:

i.   Employer reprimanded Plaintiff for taking time off work to attend the funeral of Plaintiff's niece;

ii.   Employer's employee manual and practices allow for employees to take time off for funerals of family members;

iii.   Employer placed a written warning in Plaintiff's file for an absence excused by Plaintiff's doctor(s);

iv.   Employer's manual and practices allow for employees to take time off for illness;

v.   Employer's manual does not allow for Employer to write employees up for absences excused by the employee's doctor(s);

vi.   Other Para I educators were not written up for taking time off for attending a family funeral;

    vii.   Other Para I educators were not written up or terminated for taking time off for illnesses;

    viii.   Other Para I educators were not written up or terminated for taking time off for illnesses excused by the employee's doctor(s).

f.   Immediately after Plaintiff notified Employer's new management about Plaintiff's depression and anxiety, Employer performed an adverse evaluation on Plaintiff, to wit:

    i.   Employer's manual provides for annual evaluation to be performed in April of each year;

    ii.   Employer was without reason or cause to perform an extra evaluation on Plaintiff;

    iii.   Employer required persons who did not oversee Plaintiff to comment on the evaluations;

    iv.   Employer addressed and reprimanded Plaintiff for Plaintiff's allege failure to perform lesson plans, which were not part of Plaintiff's job description;

    v.   Employer addressed and reprimanded Plaintiff for Plaintiff's allege failure to perform lesson plans, only two days after the same were implemented;

    vi.   Employer stated that Employer was terminating Plaintiff for those violations stated in the evaluations;

    vii.   On belief other Para I educators in Plaintiff's position were not reprimanded for allege failure to perform lesson plans;

    viii.   Employer's evaluations reprimanded Plaintiff for tardiness for Plaintiff's excused absence(s);

    ix.   On belief other Para I educators in Plaintiff's position were not reprimanded for excused absence(s);

x.   Plaintiff's first evaluation after the unscheduled evaluation demonstrated improvements;

xi.   Employer allegedly terminated Plaintiff for those reasons stated in the unscheduled evaluation and other evaluations;

xii.   On belief other employees were not terminated for the same or similar evaluations.

g.   Employer failed and/or refused to provide Plaintiff with a substitute teacher.

h.   Other Para I educators in Plaintiff's position were provided with a substitute or a teacher;

i.   Employer failed and/or refused to provided with a substitute or a teacher to distribute lesson plans in such a Para I's absence;

j.   Other Para I educators in Plaintiff's position were provided with a substitute or a teacher to distribute lesson plans in such a Para I's absence.

k.   Employer otherwise treated Plaintiff differently immediately after Plaintiff notified Employer's new management about Plaintiff's depression and anxiety.

62.   Plaintiff has been damaged by those adverse employment actions taken against Plaintiff, as described herein.

63.   Plaintiff has suffered actual, consequential and special damages as a direct and proximate result of Employer's adverse employment actions against Plaintiff.

64.   Employer's actions were committed with such malicious intent and/or willful disregard for Plaintiff as to subject Employer to punitive damages to punish Employer and deter Employer and others in similar circumstances from performing the same or similar acts.

65.     Plaintiff has been forced to expend certain sums for attorney fees and costs of this action, to

        bring the unlawful acts of Employer before this Court and as such Employer should be held

        responsible for all or a portion of Plaintiff's attorney fees and costs incurred in this action.

WHEREFORE Plaintiff prays for this Court's judgment in favor of Plaintiff and against Employer for all of

Plaintiff's actual, consequential and special damages, which in no event are less than $50,000, for

punitive damages in a sum sufficient to punish Employer and deter Employer and others in similar

circumstances from performing the same or similar acts; for Plaintiff's attorney fees, and for such other

and further relief as the Court deems just and proper under the circumstances.

COUNT II
Infliction of Emotional Distress, Disability Discrimination

        COMES NOW Plaintiff, pursuant to R.S. Mo. §213.010, *et. seq.*, the 1964 Civil Rights Act, Title VII and

42 U.S.C. §§ 12101, et. seq, and for Plaintiff's Count II, claims for Infliction of Emotional Distress, and

states as follows:

66.     Plaintiff incorporates those statements contained in Paragraphs 1 through 65 as if the same

        were set out in more detail herein.

67.     Plaintiff's job, as described herein and above, provided Plaintiff with a sense of pride,

        responsibility and belonging.

68.     Employer discriminated against and treated Plaintiff in such an awful and unlawful manner,

        without just cause, as described herein and above, as to subject Employer to liability for

        Employer's discriminatory actions against Plaintiff.

69.     Employer's treatment of Plaintiff and eventual termination of Plaintiff caused Plaintiff such

        emotional distress and humiliation, as to cause Plaintiff depression, an inability to sleep,

        uncontrollable bouts of crying, constant stomach upset and a general loss of pride, and a lost

        sense of security.

70.     Employer's treatment of Plaintiff and eventual termination of Plaintiff caused Plaintiff such emotional distress and humiliation, the type an ordinary person would experience under the circumstances and that may be inferred from the circumstances, as to cause Plaintiff depression, an inability to sleep, uncontrollable bouts of crying, constant stomach upset and a general loss of pride, and a lost sense of security.

71.     As a direct and proximate result of Employer's actions, Plaintiff has suffered actual and exemplary damages and emotional harm.

72.     Employer's actions were committed with malicious intent or willful disregard for Plaintiff as to subject Employer to punitive damages to punish Employer and deter Employer and others in similar circumstances from performing the same or similar acts.

73.     Plaintiff has been forced to expend certain sums for attorney fees and costs of this action, to bring the unlawful acts of Employer before this Court and as such Employer should be held responsible for all or a portion of Plaintiff's attorney fees and costs incurred in this action.

WHEREFORE Plaintiff prays for this Court's judgment in favor of Plaintiff and against Employer for all of Plaintiff's actual, consequential and special damages, which in no event are less than $50,000, for punitive damages in a sum sufficient to punish Employer and deter Employer and others in similar circumstances from performing the same or similar acts; for Plaintiff's attorney fees, and for such other and further relief as the Court deems just and proper under the circumstances.

COUNT III
Retaliatory Discrimination and Discharge

COMES NOW Plaintiff, pursuant to 42 U.S.C. §§ 12101, et. seq., the ADA, and the 1964 Civil Rights Act, Title VII, for Plaintiff's Count III, claims for Retaliatory Discrimination and Discharge, and states as follows:

74. Plaintiff incorporates those statements contained in Paragraphs 1 through 73 as if the same were set out in more detail herein.

75. As set out herein and above, Plaintiff made requests upon Employer, and subsequently on Employer's new management for accommodation under the ADA.

76. More specifically, Plaintiff asked for reasonable accommodation, as set out herein and above.

77. Immediately after requesting accommodation, Plaintiff was terminated.

78. As a direct result of exercising her rights, Plaintiff suffered damage due to Employer's acts of reprisal against Plaintiff: treating Plaintiff differently than others after Plaintiff's requests for accommodation, and Plaintiff's termination by Employer in retaliation for Plaintiff exercising Plaintiff's rights;

79. Employer's acts of reprisal against Plaintiff caused Plaintiff actual and exemplary damages.

80. Employer's actions were committed with malicious intent or willful disregard for Plaintiff as to subject Employer to punitive damages to punish Employer and deter Employer and others in similar circumstances from performing the same or similar acts.

81. Plaintiff has been forced to expend certain sums for attorney fees and costs of this action, to bring the unlawful acts of Employer before this Court and as such Employer should be held responsible for all or a portion of Plaintiff's attorney fees and costs incurred in this action.

WHEREFORE Plaintiff prays for this Court's judgment in favor of Plaintiff and against Employer for all of Plaintiff's actual, consequential and special damages, which in no event are less than $50,000, for punitive damages in a sum sufficient to punish Employer and deter Employer and others in similar circumstances from performing the same or similar acts; for Plaintiff's attorney fees, and for such other and further relief as the Court deems just and proper under the circumstances.

COUNT IV
Infliction of Emotional Distress, Retaliatory Discharge

COMES NOW Plaintiff, pursuant to R.S. Mo. §213.010, *et. seq.*, the 1964 Civil Rights Act, Title VII and 42 U.S.C. §§ 12101, et. seq, and for Plaintiff's Count II, claims for Infliction of Emotional Distress, and states as follows:

82.     Plaintiff incorporates those statements contained in Paragraphs 1 through 81 as if the same were set out in more detail herein.

83.     Plaintiff's job, as described herein and above, provided Plaintiff with a sense of pride, responsibility and belonging.

84.     Employer retaliated against and treated Plaintiff in such an awful and unlawful manner, without just cause, as described herein and above, as to subject Employer to liability for Employer's retaliatory actions against Plaintiff.

85.     Employer's treatment of Plaintiff and eventual termination of Plaintiff caused Plaintiff such emotional distress and humiliation, as to cause Plaintiff depression, an inability to sleep, uncontrollable bouts of crying, constant stomach upset and a general loss of pride, and a lost sense of security.

86.     Employer's treatment of Plaintiff and eventual termination of Plaintiff caused Plaintiff such emotional distress and humiliation, the type an ordinary person would experience under the circumstances and that may be inferred from the circumstances, as to cause Plaintiff depression, an inability to sleep, uncontrollable bouts of crying, constant stomach upset and a general loss of pride, and a lost sense of security.

87.     As a direct and proximate result of Employer's actions, Plaintiff has suffered actual and exemplary damages and emotional harm.

88.     Employer's actions were committed with malicious intent or willful disregard for Plaintiff as to subject Employer to punitive damages to punish Employer and deter Employer and others in similar circumstances from performing the same or similar acts.

89.   Plaintiff has been forced to expend certain sums for attorney fees and costs of this action, to bring the unlawful acts of Employer before this Court and as such Employer should be held responsible for all or a portion of Plaintiff's attorney fees and costs incurred in this action.

WHEREFORE Plaintiff prays for this Court's judgment in favor of Plaintiff and against Employer for all of Plaintiff's actual, consequential and special damages, which in no event are less than $50,000, for punitive damages in a sum sufficient to punish Employer and deter Employer and others in similar circumstances from performing the same or similar acts; for Plaintiff's attorney fees, and for such other and further relief as the Court deems just and proper under the circumstances.

COUNT V
FMLA Violations

COMES NOW Plaintiff and for her Count V claims for Employer's Family and Medical Leave Act ("FMLA") Violations and states and alleges as follows:

90.   Plaintiff incorporates those statements contained in Paragraphs 1 through 89 as if the same were set out in more detail herein.

91.   In the year prior to Plaintiff's termination, Plaintiff worked for more than 1250 hours.

92.   Employer employs more than seven persons.

93.   Plaintiff had not exercised more than 12 weeks leave in the 12 month period for which Plaintiff's leave was requested.

94.   Plaintiff requested leave for a serious health condition that rendered Plaintiff unable to perform the functions of the position of Plaintiff, and as such Plaintiff availed herself of FMLA leave.

95.   Plaintiff's leave was considered necessary by Plaintiff's doctor(s).

96.   Plaintiff's leave was excused by Plaintiff's doctor(s).

97.   Plaintiff was terminated from her employment.

98.   Employer alleged that the termination was because Plaintiff's absences.

99.    Plaintiff made her request pursuant to Employer's policy.

100.   In any event, the number of absences taken by Plaintiff, is not a terminable offense pursuant to

Employer guidelines.

101.   Employer has allowed other persons to call in, in situation the same or similar to Plaintiff, and

maintain their job.

102.   Employer failed and refused to provide Plaintiff with the requested FMLA paperwork.

103.   Plaintiff was terminated for exercising her FMLA leave.

104.   As a direct and proximate result of Employer's actions, Plaintiff has suffered actual and

exemplary damages.

105.   Employer's actions were committed with malicious intent or willful disregard for Plaintiff, as to

entitle Plaintiff to statutory damages for Employer's willful and malicious acts.

106.   Plaintiff has been forced to expend certain sums for attorney fees and costs of this action, to

bring the unlawful acts of Employer before this Court and as such Employer should be held

responsible for all or a portion of Plaintiff's attorney fees and costs incurred in this action.

WHEREFORE Plaintiff prays for this Court's judgment in favor of Plaintiff and against Employer for all of

Plaintiff's actual, consequential and special damages, which in no event are less than $50,000, for

punitive damages in a sum sufficient to punish Employer and deter Employer and others in similar

circumstances from performing the same or similar acts; for Plaintiff's attorney fees, and for such other

and further relief as the Court deems just and proper under the circumstances.

<u>JURY DEMANDED</u>

PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL COUNTS BROUGHT HEREIN BY PLAINTIFF.

Respectfully submitted,

KESSINGER LAW FORM, P.C.


By:   /s/ James Kessinger

    James A. Kessinger #19791
    Luke A. Demaree   #21072
    200 NW Englewood, Ste. B
    Kansas City, MO 64118
    (816) 436-0707 – Office
    (816) 436-1380 – Fax
    Jak4law@kc.rr.com
    Lad4law@kc.rr.com
ATTORNEYS FOR PLAINTIFF
PAMELA DEMAREE